The judgment of court below is reversed and cause remanded.

---

## SCHOOLS—CONSTITUTIONAL LAW.

[Cuyahoga Circuit Court, February 11, 1901.]

Caldwell, Marvin and Hale, JJ.

STATE EX REL. JACKSON V. GEORGE P. KURTZ, TREAS.

1. LAW RELATING TO SCHOOLS ARE OF A GENERAL NATURE.

Laws relating to the subject matter of education and the efficiency of our public school system, both from the vital interest which all people of the state have in them, as well as from the provisions of Sec. 2, Art. 6 of the constitution, are of a general nature.

2. ACT 94 O. L., 539, UNCONSTITUTIONAL.

The act of April 10, 1900, 94 O. L., 539, providing for the creation of a pension fund for the pensioning of teachers in city districts of the second grade of the first class, and making it the duty of the treasurer of the board of education in such city to reserve ten per cent. of teachers' salaries for such purpose, is within the inhibition of Sec. 26, Art. 2 of the constitution, providing that all laws of a general nature shall have uniform operation throughout the state, and is invalid, there being but one such city in the state.

**3. SECTION 6 OF THE ACT EXCLUDES OTHER CITIES FROM CLASS NAMED.**

Section 6 of Act 94 O. L., 539, relating to the creation of a teachers' pension fund in cities of the second grade of the first class, in providing that the first election to the retiring board therein provided for, shall be held in September, 1900, determines the fact that no other city which is not of the class and grade named in the act at that time could ever come within its provisions, and, therefore, renders the law unconstitutional as lacking uniform operation throughout the state.

**4. CANNOT BE UPHELD AS BENEFICIAL TO SCHOOL SYSTEM.**

The law in question, being applicable to but one city in the state, cannot be upheld on the ground that it adds to the efficiency of the public school system, in making provision for teachers who, during long years of service, have given their best efforts to the betterment of society. That argument bears directly upon and supports the proposition that the law is of a general nature and should have uniform operation throughout the state.

**5. RULES OF BOARD OF EDUCATION NOT CREATING CONDITIONS.**

The fact that there are certain rules employed by the board of education of the city within the class named in the law in question, not in force in other places, does not so create conditions different from those in other parts of the state as justify or uphold the law.

**6. MANDAMUS LIES TO COMPEL PAYMENT OF FULL SALARY.**

Mandamus will lie to compel the treasurer of the board of education of Cleveland to pay one who is employed as a teacher in its public schools the full amount of salary due him, without deducting any part thereof for the pension fund authorized by act 94 O. L., 539, the law being unconstitutional.

APPEAL BY DEFENDANT.

*White, Johnson, McCaslin & Cannon,* for plaintiff.

*Hogsett, Beacom, Excell, Carey & Gage,* for defendant.

MARVIN, J.

This is a proceeding in mandamus. The relator is in the employ of the board of education of the city of Cleveland as a teacher in the public schools of said city.

Cleveland is a city of the second grade of the first class of the state of Ohio.

The salary of the relator as such teacher under his contract with the board of education is $1,800 per annum payable by the defendant as treasurer of said board, in fixed installments; one of these installments being four-thirty-eighths (4–38) of the annual salary of the relator, became due and payable on October 12, 1900. Upon demand being made by the relator for such payment, the defendant refused to pay the entire amount thereof, but claimed the right to retain therefrom, and did so retain, the sum of $1.26.

This action of the defendant he seeks to justify under authority of the act of the general assembly of Ohio, passed April 10, 1900, and found in 94 O. L., 539: "An act to create a pension fund to provide for the pensioning of teachers in city districts of the second grade of the first class."

This act in terms makes it the duty of the treasurer of the board of education in cities of the second grade of the first class, to reserve, at each payment of teachers' salaries, a certain per cent. thereof for the purpose of creating a fund to be used in pensioning teachers who shall have pursued their professional employment a certain length of time. The general plan of providing the fund for such pensions, and the manner of carrying the scheme into effect, are provided for in the act.

If the act is valid, the relator here must fail, because the defendant has pursued the course pointed out by the statute in retaining out of the

amount claimed by the relator the sum which he did retain. We come then to a consideration of the validity of the act.

The first section reads: "Section 1. That a teachers' pension fund shall be established in cities of the second grade of the first class."

On the part of the relator, it is claimed that the act is in violation of several provisions of the constitution of the state. It is said that it is inhibited by Sec. 26, Art. 2 of the constitution which reads:

"All laws of a general nature shall have a uniform operation throughout the state; (1) nor shall any act except such as relates to public schools be passed to take effect upon the approval of any other authority than the general assembly, except as otherwise provided in this constitution."

It can hardly be doubted that the act under consideration does no have a uniform operation throughout the state. If there could have been any doubt about this before, the recent decision of the Supreme Court of the state, in State ex rel. Attorney General v. Cowles, decided February 5, 1901, 64 Ohio St., 000, would seem to settle the question. That is the decision ousting the board of park commissioners of this city.

The act being considered by the court in the case last referred to, like the act under consideration in this case, applies in terms to all cities of the second grade of the first class. At the time of the enactment of each of these statutes, there was, and there now is, but one such city in the state; and whatever argument can be adduced in support of the proposition that the act now under consideration may have a uniform operation throughout the state because other municipalities may be advanced to the class to which the city of Cleveland now belongs, must apply with equal force to the act which was under consideration by the Supreme Court in the park board case.

The opinion in that case was delivered by Chief Justice Shauck, and in considering the question of whether because other municipalities may hereafter become cities of the grade and class now occupied by the city of Cleveland alone, and therefore that the act may be held to have a uniform application throughout the state, this language is used:

"The proposition necessary to give importance to that distinction is that the validity of legislative acts is to be determined not by their present actual operation, but by their possible future operation. No reason is offered in support of that proposition. Indeed, the proposition is uniformly suppressed. The inevitable reliance of counsel for the support of this legislation is upon the decisions of this court sustaining the validity of legislation, dividing the cities of the state into classes and grades so that said cities are isolated, for the purpose of receiving grants of corporate power not conferred upon any other city. Such legislation was originally sustained upon the theory that the classification would remain unchanged, and that in the progress of the state's development other cities would enter the class existing. It was a judicial prophecy that an act whose practical operation was special when it was passed and considered would, in time, operate generally. How this prophecy failed of fulfillment appears from the fact that for a quarter of a century the five larger cities of the state have, in important respects, been subject to acts conferring corporate power and operating in each of them separately. With but little modification the same observation might be made of many other municipalities."

After calling attention to various acts of the general assembly, which have been held not to be in violation of this provision of the constitution, this language is used in the opinion :

" We are not now to test these acts by our knowledge of their actual operation, but we are to imagine that the classification is to remain unchanged indefinitely, so that without limit of time other municipalities may enter the same grade and class with Cleveland and so become subject to all legislation which is valid as to that city, and then inquire whether all of the cities which may enter said grade and class will become subject to the acts now under consideration."

The opinion then goes on to show that because of a provision in the statute, that the first election to the board of park commissioners shall be held on the first Monday of April, 1901, only such cities as on that day shall be within the grade and class named in the act could ever come under its provisions.

The act now under consideration, provides, in Sec. 6, that the first election for the retiring board shall be held in September of the year 1900. So that the same reasoning which is used in the opinion from which quotations have been made, would result in a finding that no city which was not of the grade and class named in the act in September, 1900, could ever come within its provisions.

Without further quotation from the opinion in the park board case, we feel bound to hold that the act now under consideration by us is one which can not have a uniform operation throughout the state.

There remains for consideration the question of whether it is a law of a general nature. That the subject matter of education is one in which all the people of the state have a vital interest, cannot be questioned. That the efficiency of our public school system is equally of a general nature, can no more be questioned. Indeed, the constitution itself evidences this proposition by the language of Sec. 2 of Art. 6, which reads :

" The general assembly shall make such provisions by taxation or otherwise, (1) as with the income arising from the school trust fund will secure a thorough and efficient system of common schools throughout the state. * * *."

The strongest argument in support of the legislation now being considered, is that it adds to the efficiency of the public schools of the city of Cleveland. It is upon this ground and this alone, that the act is sought to be justified.

It is said that if provision be made for such teachers as have labored long and faithfully in the public schools of the city, when they shall have outlived their ability to earn a subsistence for themselves, an inspiration will be given to them to develop their best efforts to the work in which they are employed, and that the public and society at large will thereby be the gainer.

It is further urged that those who, during a long series of years embracing the best part of their lives, have given their earnest efforts to the betterment of society by imparting instruction to the youth of the community, are entitled to have provision made for them in later life.

Whatever may be said as to this last proposition, it in no wise bears upon the question of whether the subject-matter of this legislation is of a general nature.

Jackson v. Kurtz.

The other proposition that the operations of this statute would be in the interests of the public because of the greater efficiency of the schools, brought about by the encouragement to the teachers, bears directly upon the question of whether the law is of a general nature. If such a statute could increase the good work done by the public schools in the city of Cleveland, what possible reason can be given why the same result would not come to every other portion of the state by the same legislation if it would be applicable to the other portions of the state.

It is urged that because of certain rules of the board of education of the city of Cleveland, conditions exist here different from those existing in other parts of the state. But these rules are only such as are provided by the board itself, and may be changed at any time and the same or similar provisions may be adopted by each of the boards of education in the state.

In Weinman v. Wilkinsburg Ry. Co., 118 Pa. St., 201, an act was under consideration entitled " An act to provide for the incorporation and for the government and regulation of street railway companies now incorporated or which may hereafter be incorporated in cities of the second and third class of this commonwealth."

In the opinion this language is used :

"The subject of this statute is therefore street railway companies, which is a subject for general legislation, while the statute professes to deal only with a limited number of these railways and these are selected by reference to their location in certain cities; under the guise of a general law, we have here one which is special because it relates to a few members of a general class of corporations known as street railway companies and local because its operations are confined to particular localities, viz.: cities of the second and third class. The provisions of the constitution cannot be brushed aside so easily."

The case is instructive in investigating the question now under consideration. Surely the subject of street railways is not of a more general nature than that of our public schools. It is difficult to think of any subject which can be of greater importance, or of a more general nature, than the proper management of such schools.

Without undertaking to give a definition which shall be exact, including just enough and none too much, of what is a law of a general nature, which the courts have found it so difficult to do, we hold that this is an act of a general nature.

Many other questions were presented to the court in argument of this case but which we have not found it necessary to consider because we hold that the act is inhibited by Sec. 26, Art. 2 of the constitution.

Judgment will be entered for the relator, as prayed for in the petition.